## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| George Hewitt, | Civil No. 12-2132 (DWF/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM** |
| | **OPINION AND ORDER** |
| The City of Minneapolis (Impound Lot/Minneapolis Department of Public Works); Don Pedlar, individually and in his capacity as Impound Lot Supervisor; Brian Hymes, individually and in his capacity as Shift Supervisor; Steve Hengel, individually and in his capacity as Assistant Manager or Supervisor, et al. | |
| Defendants. | |

Christopher R. Walsh, Esq., Walsh Law Firm, counsel for Plaintiff.

Kristin R. Sarff and Sara J. Lathrop, Minneapolis City Attorney's Office, counsel for Defendants.

This matter is before the Court on a Motion to a Dismiss (Doc. No. 4) brought by Defendants City of Minneapolis, Don Pedlar, Brian Hymes, and Steve Hengel (together, "Defendants"), and a Motion to Amend Complaint (Doc. No. 14) filed by Plaintiff George Hewitt ("Plaintiff"). For the reasons set forth below, the Court grants Defendants' motion and denies Plaintiff's motion.

## BACKGROUND

Plaintiff brought this action asserting eight causes of action all related to his central claim that Defendants discriminated against him based on his race, national origin, color, age, religion, and disability. (*See generally* Doc. No. 1, Ex. 2, Compl.) Plaintiff is a 60-year-old black Christian male who immigrated to the United States from the African Country of Eritrea. (*Id*. ¶¶ 7, 14, 46.) Plaintiff is an employee of the City of Minneapolis, Department of Public Works, where he works as a customer service representative at the City's Impound Lot. (*Id*. ¶¶ 14-15.) Plaintiff alleges that he has a 10% disability in his foot and other mental health disabilities. (*Id*. ¶ 48.)

On February 12, 2007, Plaintiff filed a Charge of Discrimination (the "2007 Charge") with the U.S. Equal Opportunity Commission ("EEOC") and the Minneapolis Department of Civil Rights ("MDCR"). (Doc. No. 10, Lathrop Aff. ¶ 4, Ex. 1.) In the 2007 Charge, Plaintiff alleged that he had been discriminated and retaliated against based on his race, color, national origin, and age. (*Id*. at 3.) He alleged that the dates of discrimination were October 1, 2006 to December 27, 2006, and that the discrimination was continuing. (*Id*. at 3.)[1]

---

[1] Although no specifics were stated in the 2007 Charge, during the investigation, Plaintiff alleged that he was denied extra hours, assigned to work alone at the cash register during busy hours, shadowed by co-workers, asked about his national origin and whether he was from a "terrorist country," referred to by a co-worker as the cousin of Osama Bin Laden, and that he was not transferred to accommodate his medical condition. (Lathrop Aff. ¶ 4, Ex. 1 at 5-6.)

On December 7, 2010, after the investigation, the MDCR concluded that "No Probable Cause" exists to believe Plaintiff's allegations of discrimination are well-founded. (*Id*. at 4, 9.) This finding was sustained by a review panel of the Minneapolis Commission of Civil Rights. (*Id*. at 11.) On June 1, 2011, the Commission on Civil Rights mailed Plaintiff a form entitled "NOTICE OF RIGHTS TO PRIVATE ACTION," alerting him to the 45-day time limit within which to bring an action alleging state-law claims. (*Id*. at 10, 12.) On July 12, 2011, the EEOC sent Plaintiff a "Dismissal and Notice of Rights," informing Plaintiff, based on its investigation, it was unable to conclude that the information gathered established a violation of federal statute. (*Id*. at 13-14.) The EEOC further explained that Plaintiff must file any lawsuit alleging federal claims within 90 days. (*Id*. at 13-14.)

On April 6, 2012, the EEOC sent the City of Minneapolis a Notice of Charge of Discrimination filed by Plaintiff. (Lathrop Aff. ¶ 5, Ex. 2 at 1.) In addition, on May 2, 2012, Plaintiff filed a Charge of Discrimination with the EEOC, MDHR, and MDCR (the "2012 Charge"). (*Id*. at 6.)[2] In the 2012 Charge, the dates of discrimination were April 1, 2011 to April 4, 2012, and continuing. (*Id*. at 6.) Plaintiff alleged that Defendants discriminated and retaliated against him based on his age, race, national origin, color, disability, and religion. (*Id*.) The EEOC dismissed Plaintiff's charge on May 17, 2012, stating: "Based upon its investigation, the EEOC is unable to conclude

---

[2] Another Notice of Charge of Discrimination was sent to the City of Minneapolis on May 17, 2012, based on the May 2, 2012 Charge. (*Id*. at 3.) Both the May 17, 2012 and the April 6, 2012 notice used EEOC Charge Number 846-2012-22863. (*Id*.)

that the information obtained established violations of the statutes." (*Id*. at 8.) On June 25, 2012, the MDCR sent Plaintiff a letter explaining that the matter was dismissed on May 17, 2012, and enclosed the EEOC's Dismissal and Notice of Rights. (*Id*. at 13-14.)

Plaintiff filed the present action in state court on August 17, 2012, and Defendants removed the case to this Court on August 29, 2012. (Doc. No. 1.) Plaintiff is represented by Christopher Walsh ("Attorney Walsh"). The portions of the Complaint that contain factual allegations read as follows:

> 46. Defendant Minneapolis created a hostile environment against immigrants, the disabled, people of color, women, and other protected class members. A white guard called Plaintiff, "Godamn Somali." He is a Christian and is not Somali. The racially and sexually degrading or biased comments and conduct of supervisors and MCC employees constituted illegal harassment and a hostile environment. Defendants failed to take corrective action or remedy the long and sordid history of discrimination, harassment, and unequal discipline against minorities.
>
> . . .
>
> 53. There is direct and indirect evidence of age discrimination and retaliation in violation of the ADEA, 29 U.S.C. § 623(d), *et seq*., and other age discrimination laws. Upon information and belief Defendants made age-biased comments to all Plaintiff [sic] as described herein during the course of their [sic] employment. The comments and inferences that Plaintiff was too old, too slow, needed a time clock or constant monitoring and surveillance to complete their [sic] work in a timely fashion, "how long are you going to work here," he [sic] should quit or retire if you don't like the job, were directed only at Plaintiff and younger, employees were not treated this way, discriminated against, retaliated against, and terminated as Plaintiff was.
>
> . . .

> 64. Defendants used tricks or artifices or devices to bring about or facilitate discrimination, including stating false and pretextual reasons for discipline of Plaintiff. Exaggeration and double standards relating to being "discourteous," insubordinate, damaging property, being out of one's work area, taking extended breaks, theft or dishonesty and even glancing at a newspaper were used to harass and obstruct Plaintiff from reporting discrimination and take them [sic] off the job. Once Plaintiff was obstructed, discredited, damaged in reputation, emotionally and economically by Defendants' lies and artifices, it had the effect of silencing or diminishing their [sic] complaints and protected activity. Defendants continued to retaliate against Plaintiff even after termination of employment by opposing Plaintiff's attempts to receive benefits, retirement, pension rights, grievance and union arbitration rights, unemployment benefits and other adverse action.

(Compl. ¶¶ 46, 53, 64.)

Defendants point out the confusing nature of Plaintiff's allegations, namely that the Complaint appears to reference multiple plaintiffs and repeatedly references Plaintiff's termination. This case involves a single plaintiff who was not terminated. Defendants also discovered, and point out, that the language in paragraphs 53 and 64 of the Complaint appears verbatim in another complaint drafted by Attorney Walsh. *See Benford v. City of Minneapolis*, Civ. No. 10-cv-04539 (ADM/LIB), Doc. 4 (First Am. Compl.) ¶¶ 318, 329.[3] A review of the relevant documents in the *Benford* case reveals that the allegations in paragraphs 53 and 64 of this case actually relate to the evidence in the *Benford* case, not the facts of this case.

---

[3] On October 24, 2012, an attorney for Defendants e-mailed Attorney Walsh to inquire whether paragraphs 53 and 64 of the Complaint were inadvertently included in this lawsuit, noting that they were identical to the allegations in *Benford*. (Lathrop Aff. ¶ 2.) She never received a response from Attorney Walsh. (*Id.* ¶ 3.)

In support of their motion to dismiss, Defendants argue that Plaintiff's claims should be dismissed pursuant to the statute of limitations, due to Plaintiff's failure to exhaust administrative remedies, and for failure to state a claim upon which relief can be granted. (Doc. No. 9.) Plaintiff failed to file an opposition to Defendants' motion to dismiss until December 7, 2012, the morning of the scheduled hearing and twenty days *after* Plaintiff's opposition was due.[4] (Doc. No. 12.) Attorney Walsh asserts that he had justifiable excuses for the delay, including several neck injuries, two car accidents, the loss of an associate attorney, a law clerk who was "out for the bar exam much of the summer," and responsibilities in other complicated cases. (Doc. No. 13, Walsh Aff. ¶¶ 15, 16.) At the hearing, Attorney Walsh appeared and indicated that he intended to file an amended complaint. The Court agreed to place Plaintiff's motion to amend the Complaint before it to determine if the motion was properly filed and whether the motion should be considered. (Doc. No. 17 at 2.) The Court ordered Plaintiff to file a copy of its proposed amended complaint by December 17, 2012, and reserved the right to receive an

---

[4] On September 13, 2012, Attorney Walsh sent an e-mail to Magistrate Judge Noel's chambers indicating that Plaintiff intended to amend his Complaint, and that such an amendment would address issues raised in the motion to dismiss. (Doc. No. 24, Sarff Aff. ¶ 4, Ex. 2.) In addition, in an e-mail to Defendants' counsel dated October 5, 2012, Attorney Walsh indicated that a draft of an amended complaint would be completed soon. (*Id.* ¶ 6, Ex. 4.) Defendants also assert that during a meet and confer conference on October 12, 2012, Attorney Walsh indicated that ten pages of facts relevant to Plaintiff's claims were inadvertently left out of the Complaint. (*Id.* ¶ 2.) Defendants' counsel offered to review the contents of an amended complaint if it was received before Defendants filed their memorandum in support of their motion to dismiss. (*Id.*) Plaintiff did not provide a draft of a proposed amended complaint before Defendants filed their memorandum on October 26, 2012.

amended complaint and rule on the merits of the pending motion for leave to amend with or without oral argument. (*Id*.) The Court also reserved the right to award attorney fees and costs to Defendants related to the preparation for and the appearance at the December 7, 2012 hearing, and any additional costs and expenses, including attorney fees, related to Plaintiff's untimely submissions. (*Id*.)

On December 17, 2012, Plaintiff filed his proposed First Amended Complaint. (Doc. No. 18.) While the proposed First Amended Complaint contains a single highlighted line, it does not contain a red-lined (or otherwise marked) version required by Local Rule 15.1. In addition, despite the Court's clear indication that it would consider whether it would hear the motion to amend and, thus, whether it would accept the proposed First Amended Complaint, Plaintiff's counsel requested, and received, a summons to issue for the First Amended Complaint. (Doc. No. 20.) Further, two days after submitting the proposed First Amended Complaint, Plaintiff requested permission to file a Second Amended Complaint. (Doc. No. 21.) The Court deferred any consideration of Plaintiff's request to file a Second Amended Complaint until the pending motion to dismiss was ruled upon. (Doc. No. 26.)

## DISCUSSION

**I.     Plaintiff's Motion to Amend the Complaint**

Plaintiff moves to amend his Complaint under Rule 15 of the Federal Rules of Civil Procedure. Rule 15 provides in relevant part:

> **(a) Amendments Before Trial.**
> **(1)** *Amending as a Matter of Course.* A party may amend its pleading once as a matter of course within:

7

>   **(A)** 21 days after serving it, or
>   **(B)** if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>   **(2) Other Amendments.** In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15.

Because Plaintiff filed his motion to amend the Complaint well after the time permitted for amending as a matter of course, and having failed to obtain Defendants' written consent, Plaintiff must obtain the Court's leave in order to file his proposed amended complaint. Fed. R. Civ. P. 15. "Although leave to amend shall be freely given when justice so requires . . . plaintiffs do not have an absolute or automatic right to amend." *United States v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005) (citation omitted). The Court may deny a motion to amend when there is undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice to the non-moving party, or futility of the amendment. *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008). Moreover, "[a] district court does not abuse its discretion in denying leave to amend where a plaintiff has not followed applicable procedural rules." *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 505 (8th Cir. 2009). The applicable local rule requires a party requesting leave to amend to include a copy of the proposed amended pleading and "a version of the proposed amended pleading that shows—through redlining, underlining, strikeouts, or other similarly effective typographic methods—how the proposed amended pleading differs from the operative pleading." D. Minn. LR 15.1(b).

Here, Attorney Walsh has repeatedly failed to comply with the rules and has generally failed to conduct himself with diligence and professionalism that is expected by the Court. First, Plaintiff, through his attorney, filed a Complaint that appears to have been cut-and-pasted from the complaint in a different case, and contains allegations with no bearing on the present case. Second, despite indicating to Defendants and the Court on several occasions (the first time being in September 2012) that he intended to amend his complaint, Plaintiff did not file a motion to amend until the day of the hearing on Defendants' motion to dismiss, and then failed to provide a draft of a proposed amended complaint at that time. Instead, pursuant to the Court's order, Plaintiff filed his proposed First Amended Complaint on December 17, 2012. When Plaintiff filed the proposed First Amended Complaint, he did so without a properly red-lined (or otherwise appropriately marked) version. Moreover, despite the fact that the Court had not yet ruled on whether to permit the amendment, Plaintiff requested and received a summons and, just days after filing the proposed First Amended Complaint, requested to file a Second Amended Complaint. Finally, Plaintiff failed to file an opposition to Plaintiff's pending motion to dismiss (which is discussed further below) until the morning of the hearing.

Attorney Walsh has displayed a complete lack of respect for the rules of the Court and a disregard for the parties involved in this lawsuit. The Court finds it particularly egregious that Attorney Walsh appears to have simply copied the factual allegations from another case and completely failed to respond to Defendants' inquiry into those allegations. In light of the extreme nature of Attorney Walsh's conduct, the Court finds

9

that Plaintiff, through the actions of his attorney, has unduly delayed and acted in bad faith in moving to amend his complaint. In addition, the Court finds that Defendants have been prejudiced by Plaintiff's conduct, as parties must be able to rely on the expectation that their adversaries will comply with the rules of Court, so that they can properly and efficiently prepare their case.[5] Because Plaintiff's failure to comply with the rules and general lack of professionalism and diligence are both inexcusable and prejudicial, the Court denies Plaintiff's motion to amend.

## II.     Motion to Dismiss

Defendants moved to dismiss Plaintiff's Complaint in its entirety. Plaintiff's opposition was due on November 16, 2012. Plaintiff filed his response at 5:33 a.m. on December 7, 2012, the day of the scheduled hearing on Defendants' motion to dismiss. If a party fails to timely file a memorandum of law, the Court may cancel the hearing and consider the matter on the papers, reschedule the hearing, refuse oral argument by the party who failed to file, award reasonable attorney fees to the opposing party, take some combination of these actions, or "take any other action that the court considers appropriate." D. Minn. LR 7.1(g).

For the reasons discussed above, namely Plaintiff's undue delay and blatant disregard for the rules of Court, the Court refuses to consider Plaintiff's untimely opposition to Defendants' motion to dismiss. Having reviewed the substance of

---

[5]     Upon review, amendment would likely be futile, as it appears that the allegations of the proposed First Amended Complaint would not withstand a motion to dismiss.

Defendants' arguments for why Plaintiff's claims fail, and considering Plaintiff's failure to oppose those arguments, the Court grants Defendants' motion to dismiss.[6]

## ORDER

For the reasons stated above, **IT IS HEREBY ORDERED**:

1. Defendants' Motion to Dismiss (Doc. No. [4]) is **GRANTED**.

2. Plaintiff's Complaint (Doc. No. [1]) is **DISMISSED WITH PREJUDICE**.

3. Plaintiff's Motion to Amend (Doc. No. [14]) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.


Dated: February 27, 2013          s/Donovan W. Frank
                                  DONOVAN W. FRANK
                                  United States District Judge

---

[6] Not only has Plaintiff waived any arguments in opposition to Defendants' motion to dismiss by failing to respond, but Plaintiff's claims fail as a matter of law and/or under *Twombly*.